### 14923. PERDUE *et al.* v. GRIFFIN.

JENKINS, P. J. Plaintiff delivered his Buick car to the defendant dealers, with the understanding that it was to be exchanged or bartered for one of similar type. He contended that the defendants made constructive delivery of the new car in exchange for the old, and he sued in trover for the new car thus claimed to have been delivered. Whether or not, under the evidence submitted, such a delivery was made is one of the two questions in the case. The testimony on this question is set forth in the statement following this decision. The other question is whether the defendants had title to the car at the time of the alleged delivery, or whether title was in a certain bank, under an instrument held by the bank. *Held:*

1. "The plaintiff in trover must recover on the strength of his own title. An outstanding title in a third person may be shown by the defendant, and will defeat a recovery." *Central Bank* v. *Ga. Grocery Co.,* 120 *Ga.* 883, 885 (48 S. E. 325). " 'The criterion by which a deed (or bill of sale) to secure debt is distinguished from a statutory mortgage—or, as we ordinarily say, from a mortgage—is that the one passes title and the other does not; and this is determined by the apparent intention of the parties as evidenced by the writings connected with the transaction. Though the instrument purports to convey the property to the grantee, yet if it describes a debt, and there is in it a defeasance clause, i. e., a provision declaring that it shall be void or of no further effect upon the payment of the debt, it is a mortgage and not a deed' " or bill of sale. *Dewit* v. *Bozeman,* 17 *Ga. App.* 666 (2) (87 S. E. 1100). Although an instrument be entitled a "bill of sale" and contain a clause purporting to "grant, sell, and convey" certain personalty, if it provides merely that the grantee is "to have and to hold" the property as additional security "until" the debt therein described "is paid and fully satisfied," the instrument will be construed to be a mortgage, and not a bill of sale to secure a debt, since, under the provisions of such a defeasance clause, the mere payment of the debt operates to extinguish the lien without any act of cancellation or conveyance on the part of the holder thereof. The instrument offered by the defendants for the purpose of defeating the plaintiff's action of trover by showing title in a third person, being under the rules stated a mortgage conveying no title, was properly excluded by the court as irrelevant. *Denton* v. *Shields,* 120 *Ga.* 1076, 1078 (48 S. E. 423); *Pitts* v. *Maier,* 115 *Ga.* 281 (41 S. E. 570); *Lane* v. *Smart,* 21 *Ga. App.* 292 (1), 293 (94 S. E. 325); *Massillon Engine Co.* v. *Burnet,* 19 *Ga. App.* 487 (1) (91 S. E. 786).

2. Delivery may be actual or constructive. In the latter case, while actual

possession may remain in the vendor, he thereafter holds not for himself, but as the agent or bailee of the purchaser. The question is not whether the vendor retains actual possession, but whether he has parted with his dominion over the property, so as thereafter to hold under the authority of the vendee. In the instant case the promise to the plaintiff by one of the defendants to make future delivery was not the equivalent of present constructive delivery; nor was delivery made by the statement to the plaintiff's attorney in which such promise was renewed and reference was made to the property as belonging to the plaintiff; since, in the absence of a writing passing title, delivery is necessary, and the defendant in refusing actual delivery did not assume to hold possession for the plaintiff, but, while promising future delivery, plainly and distinctly indicated that dominion over the property could not then be parted with, but was conditional upon a future agreement with his partner. The plaintiff having failed to prove his title in the property sued for, in that he failed to show a delivery of the property to himself, a verdict in his favor was unauthorized.

*Judgment reversed. Stephens and Bell, JJ., concur.*

DECIDED APRIL 19, 1924.

Trover; from Glynn superior court—Judge Highsmith. July 14, 1923.

With reference to the alleged constructive delivery George L. Griffin, the plaintiff, testified: "The cars had come in, and Mr. Perdue (defendant) had said, 'Out of two cars I am going to give you that one (pointing), because it runs a little nicer.' At that time there were two cars in the place of business. I went over there, I don't know how many times, but there was some reason other than the real reason developed later." On cross-examination he said: "In our first conversation I could not understand his hesitancy about turning it over. He simply said to me, 'Here are two cars, one runs better than the other, and I am going to give you the better car.' He did not say to me, 'I am in trouble with Mr. Morgan' (his partner). That developed some time later when he came over to explain to me that there was some trouble that had to be thrashed out. He said it would be necessary to be a little patient, and he wanted to reassure me about the matter. At the first interview he said nothing as to the reason why he did not turn the car over to me right then. Nothing then. I went there to get my car. I did not get it." Judge D. W. Krauss, attorney for the plaintiff, testified: "About the time stated by Mr. George Griffin he came to our office and wanted us to help him get a car from Brunswick Buick Company, and explained the matter to me about as he has explained it here today, and I immediately

went down to the place of the Brunswick Buick Company and saw Mr. Perdue,—probably I had to go a second time before I saw him,—and stated to Mr. Perdue just about in substance, 'What about Mr. Griffin's car, he wants his car.' He said, 'Judge (pointing to car), that is Mr. Griffin's car that we brought down for him;' and that car was just at the place where Mr. Griffin said he had it pointed out to him, on the right-hand side of the showroom as you go into Brunswick Buick Company's place on Newcastle street. I said, 'O. S., would you have any objection to giving us the numbers of the car, so it could be no question of identification,' and he said, 'None in the world.' He looked under the hood and got the numbers and put them on this slip of paper, 'Motor 912988, frame number 862878, model 23-35, Buick 5 passenger.' That is all in Mr. Perdue's handwriting. I said, 'O. S., Mr. Griffin wants to get the car, what's the trouble?' He said, 'No trouble, it is just a matter of finances between Mr. Morgan and myself, he can get the car to-morrow.' I said, 'We can wait until to-morrow, but Mr. Griffin ought to get the car.' He said, 'You need not be worried, Mr. Griffin will get his car.' I went back and told Mr. Griffin to wait a day or two, I didn't think there would be any trouble, and in a couple of days Mr. Griffin came back, and I went back and saw Mr. Perdue, and he says, 'I am sorry, I cannot deliver you the car,' and I says, 'I will have to bring proceedings,' and he said, 'That is all right.' The car was at the same place Mr. Griffin testified about. There was another car at the left-hand side as you go in. There were two cars in the show-room of the Brunswick Buick Company. That was the last request or demand on the Brunswick Buick Company for this car, for the delivery of this car, was on the day of the filing of the suit. I came back and told Mr. Griffin he would have to proceed. The proceedings were filed on the 20th of October, and that was the day of the last conversation I had with Mr. Perdue and request that he give Mr. Griffin the car." On cross-examination the witness said: "I did go down there wanting to get delivery of the car. I had to have some good reason for not getting it. I says, 'Roll her out, I can drive it.' I did not get it. The only reason Mr. Perdue ascribed for not delivering it was some difference between him and Mr. Morgan,—said there was some financial arrangement existing between him and Mr. Morgan. The next

day I went back, and he says, 'I will deliver it to you in a day or two.' I says, 'What is the trouble, we are going to file proceedings to get the car,' and he says, 'All right, go ahead.' And we went ahead."

*Bennet, Twitty & Reese,* for plaintiffs in error.

*Krauss & Strong,* contra.