## WOLFF & HAPP *v.* HAWES.

Where from the nature of the transaction involving a sale of goods to a wife the vendor was left honestly in doubt as to whether the wife was purchasing on her own account, or for her husband, and the wife afterwards, upon inquiry made of her by the vendor or his

agent, stated that she purchased the goods on her own account, and in her own business, and thereupon the vendor acted upon such admissions to his own injury, in that he did not press the claim against the husband, who was in failing circumstances, such an admission by the wife amounts to an estoppel; and, in a subsequent suit against her for the purchase-price of the goods, it will preclude her from setting up the defense that it was the husband's debt. The court erred in refusing to charge this principle of law in the case, and in refusing to admit testimony showing that the plaintiff had acted upon such admission to his injury.

Submitted June 10, — Decided July 23, 1898.

Complaint on account. Before Judge Felton. Bibb superior court. November term, 1897.

Wolff & Happ sued Mrs. Hawes upon an open account. The defendant set up that the debt was her husband's, and not hers. It appeared that the account was for goods sold and delivered upon orders of the defendant, at a store of which she was in charge. The bills sent with the goods were made out against H. B. Hawes, defendant's husband. According to the testimony of the defendant and that of her husband, the business was owned and conducted by him, and she was merely his clerk and bought under his direction. Richter, a salesman of the plaintiffs, testified that he sold the defendant the goods, and expected to be paid by her. He did not know at the time he sold them who owned the store. He treated her as the proprietor of the store. She did not tell him it belonged to her husband, and he did not know her husband in the transaction. The husband ran a store in another part of the city, and witness sold him goods for that store. The two accounts were entirely separate and had no connection with each other. Before witness began selling to defendant, he was in the husband's store, and asked him why witness could not sell his wife some goods. Hawes said he supposed witness could; to go over and ask her. After this, witness went over and began selling to her. Shortly after the last bill of goods was sold, witness went with Wolff, one of the plaintiffs, to see the defendant about the account. It was about the time that her husband failed in business. Wolff asked her about the account, and she told him he need not be uneasy at all about the account, as it was her own account and

the store was hers, that she would pay him every dollar of it, that she bought the goods herself and would pay for them just as soon as she could get the money. Witness had nothing to do with the bookkeeping of the plaintiff firm, and did not know until the suit was brought that the goods were charged to H. B. Hawes. He did not know how the bills that were sent were made out. Wolff testified that at the time the account was opened he did not know anything about it. The goods were charged by the bookkeeper to H. B. Hawes. He did not pay any attention to the account until he learned that H. B. Hawes was in a shaky financial condition. This was shortly after the last bill of goods had been shipped. He then went with Richter to see the defendant about the account, and she told them that they need not be uneasy about the account, that it was her business and her account, that she bought the goods and would pay for them as soon as she could. Witness did not take any steps to collect the account of H. B. Hawes. At the time witness had this conversation with defendant, there were in the stock a number of goods embraced in this account. He made no effort to recover these goods. Defendant testified that she did not tell Richter the store was her husband's and that she was acting as agent for him. He told her the first time he came there that her husband had sent him. The verdict was for the defendant. The plaintiffs except to the overruling of their motion for a new trial. The motion was upon the grounds that the verdict was contrary to law and the evidence, and that the court erred: In refusing to allow Wolff to testify, that he took no steps to collect the account sued upon from defendant's husband, on account of the statement of defendant, when asked about the account, to the effect that the same was her debt, the goods having been purchased by her; that he took no steps to recover the goods sold by the plaintiffs which remained in the stock of defendant or her husband; that suit was brought against defendant on account of said statement, and would not have been brought against her had she stated that the account was her husband's. And in refusing to charge: (a) "If you believe from the evidence that the defendant stated to a member of plaintiff firm that the account was originally due by her and that her husband had nothing to

do with the debt, then I charge you that if said plaintiff. relied on such admission and acted on same to his firm's injury or to defendant's advantage, she (the defendant) would be estopped from denying that she was so indebted, and her admission, if such admission was made, must be taken as conclusive proof of her indebtedness.   I further charge you, that if you believe such admission was made by defendant and plaintiff acted on such admission in incurring the costs of this present suit, if you believe that any costs have been incurred, or if you believe that plaintiffs have given up any remedy they might have had, either against the goods or against the ·defendant's husband, in consequence of any admission on the part of the defendant that the debt was due by her and not her husband, if you believe such admission was made, then in either event she can not now deny the truth of such admission, and plaintiffs would be entitled to a verdict against her, regardless of whether or not such admission were true or false."    (*b*)  " Plaintiffs introduced evidence to show that the defendant stated to a member of plaintiffs' firm, immediately after certain transfers were made by H. B. Hawes to his wife, the defendant in this case, in effect, that the account upon which suit is now brought was due by her and had never been the debt of her husband; that plaintiffs relied upon such statement and acted upon same to their injury, and ·that therefore the defendant is estopped from denying the truth of her said statement.    On this point I charge you that an estoppel may arise from acts or words, or both, which are intended to induce another to act in some matter touching his interest, on which he does act, and by which an advantage is gained by him who speaks or acts, or by which injury results to the other party. That is to say, one person, by his or her admissions or conduct, shall not be allowed to influence another with whom he or she is dealing, and lead him into a line of conduct prejudicial to his interests, unless the party estopped be cut off from power of retraction.    If, therefore, you believe that the defendant made such admission or statement and that plaintiffs acted on same, either to their own injury or to the advantage of the defendant, then I. charge you that the defendant will be estopped from denying the truth of same."

*Dasher, Park & Gerdine,* for plaintiffs.

LEWIS, J.   The circumstances surrounding the sale of the goods by plaintiffs' agent were of such a nature, to say the least, as to leave the creditor in honest doubt whether the wife had purchased on her own account, or as agent for her husband. There was, in fact, nothing in the transaction to indicate any agency in the wife.   She and her husband were occupying different stores in the same city, she apparently having as absolute dominion and control over one store as the husband had over the other.   When the husband was asked by plaintiffs' agent about selling to the wife, the agent was referred to her.   He accordingly sold to her at her place of business, and nothing occurred to indicate that she was not buying on her own account.   The agent thought he was extending credit to her, and such an infer-ence was certainly legitimate under the circumstances.   It is true the bills were made out against the husband.   This was merely a circumstance to show to whom the credit was extended, and was open to examination.   It appears that this was the result of the bills being entered against the husband by the book-keeper, who was not made aware of the nature of the transaction.   When the husband was in failing circumstances, evidently to put the matter beyond all question, plaintiffs' agent called upon the wife to know definitely to whom he should look for the payment of the claim.   He was then assured by her that her husband had nothing to do with the debt, and that it was hers and would be paid.   At that time some of the goods bought were in the store occupied by the wife.   Plaintiffs acted upon these representations; took no steps to seize the goods or to otherwise enforce their claim against the husband; relied upon her for payment, and she failing to pay, acting upon her representations, brought this suit.   These facts were not even denied by the defendant.   It seems to us that if there ever was a case in which the doctrine of estoppel in pais should apply, it is made out by this record.   Section 5150 of the Civil Code declares, as one of the grounds of an estoppel, "admissions upon which other parties have acted, either to their own injury or the benefit of the persons making the admissions."   Here plaintiffs acted

upon the admission made by the defendant to their own injury, in that they were induced to adopt a course which lost to them an opportunity, that might otherwise have existed, of collecting the claim from the husband; and also were injured by being induced by such admissions to incur the expense of a suit against the wife. It is also reasonable to infer that the admission operated to the benefit of the defendant who made it; for by virtue of it she was permitted to continue in the business in which she was engaged, and to traffic in the very articles that were purchased of the plaintiff. It has been held, that where one has been induced by the representations of a third party to institute suit for the purpose of subjecting certain property as the property of the debtor, such representations estop the person making them from afterwards setting up a claim to the property. Mitchell *v.* Reed, 9 Cal. 204, 70 Am. Dec. 647; Drew *v.* Kimball, 43 N. H. 282, 80 Am. Dec. 163. This is not a case in which can be applied the rule that any assumption by the wife of the husband's debts is void. While her power of contracting is restricted by law, yet there is no principle of law or justice that will tolerate in her, any more than in a man, the perpetration of a fraud. Even minors may be estopped by their admissions from denying the truth of them, or by their silence when the circumstances call for a disclosure of their claims or their rights, provided the minor has arrived at those years of discretion when a fraudulent intent could be reasonably imputed to him. *Whittington* v. *Wright*, 9 *Ga.* 23. A married woman has no legal rights that can exempt her from this rule of law and justice. *Dunbar* v. *Mize*, 53 *Ga.* 439 (2); *Dotterer* v. *Pike*, 60 *Ga.* 42; *Archer* v. *Guill*, 67 *Ga.* 195-200; *Ruffin* v. *Paris*, 75 *Ga.* 654; *Henry* v. *McAllister*, 99 *Ga.* 557. We think, therefore, that the court erred in not giving in charge to the jury the request made by plaintiffs' counsel, and in not admitting the testimony offered by plaintiffs as to why they took no steps to recover the claim against the defendant's husband.

    *Judgment reversed. All the Justices concurring.*